IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
|     *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-cv-00378 |
| | § | |
| GALVESTON INDEPENDENT | § | |
| SCHOOL DISTRICT, ANTHONY | § | |
| BROWN, in his official capacity as | § | |
| GALVESTON ISD President, JOHNNY | § | |
| SMECCA, in his official capacity as | § | |
| GALVESTON ISD Vice President, | § | |
| ELIZABETH BEETON, in her official | § | |
| Capacity as GALVESTON ISD Trustee, | § | |
| DAVID H. O'NEAL, JR., in his official | § | |
| capacity as GALVESTON ISD Trustee, | § | |
| ANN MASEL, in her official capacity as | § | |
| GALVESTON ISD Trustee, MINDY | § | |
| LAKIN, in her official capacity as | § | |
| GALVESTON ISD Trustee, and JUSTIN | § | |
| TUCKER, in his official capacity as | § | |
| GALVESTON ISD Trustee | § | |
|     *Defendants* | § | |

---

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S ORIGINAL PETITION

---

Celena C. Vinson
Stephanie A. Hamm
Phillip Ericksen

**THOMPSON & HORTON LLP**
3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6742
Facsimile: (713) 583-8884

ATTORNEYS FOR DEFENDANTS

# TABLE OF CONTENTS

Index of Authorities................................................................................................iii

Summary of the Argument.......................................................................................1

Background ...............................................................................................................2

Issues Presented.......................................................................................................5

Legal Standards ........................................................................................................5

    I.     Rule 12(b)(1): Lack of Subject Matter Jurisdiction .................................5

    II.    Rule 12(b)(6): Failure to State a Claim ....................................................6

    III.   Ultra Vires Claims .....................................................................................6

Argument and Analysis............................................................................................7

    I.     Several courts have held that Senate Bill 10 is unconstitutional because binding precedent holds that permanently displaying the Ten Commandments in public classrooms violates the First Amendment....................................................................................................7

          A.    *Stone v. Graham* ........................................................................8

          B.    *Van Orden v. Perry* ...................................................................9

          C.    *Roake v. Brumley* ...................................................................10

          D.    *Nathan v. Alamo Heights ISD* and *Cribbs Ringer v. Comal ISD*..................11

    II.    Because Senate Bill 10 violates the First Amendment, it cannot serve as the basis of an ultra vires claim..............................................12

    III.   The Trustees acted within their lawful authority under Board Policy, State Law, and Federal Law, and are therefore immune from liability....................................................................................................13

    IV.   Plaintiff's claims against Galveston ISD must be dismissed because a governmental entity cannot be liable for an alleged ultra vires act, and because Plaintiff's claims otherwise fail as a matter of law ........15

Conclusion and Prayer...........................................................................................16

## INDEX OF AUTHORITIES

CASES

*Alexander v. Johnson,*
    217 F. Supp. 2d 780 (S.D. Tex. 2001) ...............................................................................12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...............................................................................................................6

*Benfield v. Magee,*
    945 F.3d 333 (5th Cir. 2019) .................................................................................................6

*Chambers–Liberty Cntys. Navigation Dist. v. State,*
    575 S.W.3d 339 (Tex. 2019) ..................................................................................................6

*City of El Paso v. Heinrich,*
    284 S.W.3d 366 (Tex. 2009) .......................................................................................6, 7, 16

*Cribbs Ringer v. Comal Indep. Sch. Dist.,*
    --- F. Supp. 3d ---, 2025 WL 3227708 (W.D. Tex. Nov. 18, 2025) ...............5, 11, 12, 16

*Edwards v. Aguillard,*
    482 U.S. 578 (1987) .............................................................................................................10

*Everson v. Bd. of Educ. of Ewing Twp.,*
    330 U.S. 1 (1947) .................................................................................................................10

*Ex Parte Bockhorn,*
    138 S.W. 706 (Tex. Crim. App. 1911) ...............................................................................12

*Hall v. McRaven,*
    508 S.W.3d 232 (Tex. 2017) .................................................................................14, 15, 16

*Hous. Belt & Terminal Ry. Co. v. City of Houston,*
    487 S.W.3d 154 (Tex. 2016) .......................................................................................6, 7, 15

*Howery v. Allstate Ins. Co.,*
    243 F.3d 912 (5th Cir. 2001) .................................................................................................5

*Kennedy v. Bremerton School District,*
    597 U.S. 507 (2022) .............................................................................................................11

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ...............................................................................................................5

*Lemon v. Kurtzman,*
    403 U.S. 602 (1971)..................................................................................11

*Marbury v. Madison,*
    1 Cranch 137 (1803) ...............................................................................13

*Matzen v. McLane,*
    659 S.W.3d 381 (Tex. 2021) .....................................................................7

*Miller v. Davis,*
    150 S.W.2d 973 (Tex. 1941) ....................................................................12

*Nathan v. Alamo Heights Indep. Sch. Dist.,*
    795 F. Supp. 3d 910 (W.D. Tex. 2025) ...................................... 4, 11, 16

*Nathan v. Alamo Heights Indep. Sch. Dist.,*
    157 F.4th 713 (5th Cir. 2025) ...................................................................4

*Ramming v. U.S.,*
    281 F.3d 158 (5th Cir. 2001), *cert denied*, 536 U.S. 960 (2002) ...........5

*Reynoldsville Casket Co. v. Hyde,*
    514 U.S. 749 (1995)..................................................................................13

*Roake v. Brumley,*
    141 F.4th 614 (5th Cir. 2025) ......................................................3, 10, 16

*Roake v. Brumley,*
    154 F.4th 329 (5th Cir. 2025) ......................................................4, 11, 16

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
    490 U.S. 477 (1989)..................................................................................12

*Sch. Dist. of Abington, Pa. v. Schempp,*
    374 U.S. 203 (1963)....................................................................................9

*Schroeder v. Escalera Ranch Owners' Ass'n,*
    646 S.W.3d 329 (Tex. 2022) ........................................................ 6, 7, 14

*Spotts v. U.S.,*
    613 F.3d 559 (5th Cir. 2010)......................................................................6

*Stone v. Graham,*
    449 U.S. 39 (1980)......................................................................1, 8, 9, 16

*Van Orden v. Perry,*
  545 U.S. 677 (2005)...............................................................................1, 9, 10, 16

*Zelman v. Simmons-Harris,*
  536 U.S. 639 (2002)...................................................................................................8

**CONSTITUTIONAL PROVISIONS**

TEX. CONST. art. XVI, § 1(a)......................................................................................1

U.S. CONST. amend. I..........................................................................................8, 15

U.S. CONST. art. VI, cl. 2............................................................................................1

**STATUTES**

TEX. EDUC. CODE § 1.0041(b)(1)...............................................................................3

TEX. EDUC. CODE § 1.0041(c)....................................................................................3

TEX. EDUC. CODE § 1.0041(d)................................................................................3, 4

TEX. EDUC. CODE § 1.0041(g)....................................................................................4

TEX. EDUC. CODE § 11.151(a)....................................................................................2

TEX. EDUC. CODE § 11.151(b)....................................................................................2

**RULES**

FED. R. CIV. P. 12(b)(1)...................................................................................5, 6, 15

FED. R. CIV. P. 12(b)(6).....................................................................................6, 13

## SUMMARY OF THE ARGUMENT

> I do solemnly swear (or affirm), that I will faithfully execute the duties of the office of [Trustee of Galveston Independent School District] of the State of Texas, and will to the best of my ability preserve, protect, and defend the Constitution and laws of the United States and of this State, so help me God.

TEX. CONST. art. XVI, § 1(a).

Each Galveston ISD Trustee[1] has stated these solemn words.  In doing so, they bound themselves under legal authority to "preserve, protect, and defend the Constitution and laws of the United States." *Id.*  Of course, the Trustees owe the same duty to the Texas Constitution and Texas statutes—but only to the extent those state statutes comply with the United States Constitution.  The United States Constitution is "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. CONST. art. VI, cl. 2.

For nearly half a century, it has been well settled that the First Amendment prohibits public schools from permanently posting the Ten Commandments in classrooms.  Current binding United States Supreme Court precedent expressly prohibits such displays.  *Stone v. Graham*, 449 U.S. 39, 41 (1980) (holding that posting the Ten Commandments in public schools violates the First Amendment); *see also Van Orden v. Perry*, 545 U.S. 677, 703 (2005) (Breyer, J., concurring) (noting that the "government must exercise particular care in separating church and state" in public schools "given the impressionability of the young").  Yet, on June 20, 2025, the Governor of Texas signed into law Senate Bill 10 ("S.B. 10") requiring that every public elementary and secondary school in the state "display in a

---

[1] Galveston ISD's Trustees—Anthony Brown; Johnny Smecca; Elizabeth Beeton; David H. O'Neal, Jr.; Ann Masel; Mindy Lakin; and Justin Tucker—are sued in their official capacities.

conspicuous place in each classroom of the school a durable poster or framed copy of the Ten Commandments."

Because S.B. 10 conflicts with the "supreme Law of the land," the Trustees voted to delay complying with S.B. 10 pending resolution of several ongoing legal challenges to the bill. In doing so, they fulfilled their obligations and acted squarely within the scope of their lawful authority. Their decision to delay implementation of a state statute that is "plainly unconstitutional" under existing law was both appropriate and legally justified.

Accordingly, the Trustees could not have engaged in ultra vires conduct, and the State of Texas has failed to state a viable claim against them. And because a governmental entity cannot commit an ultra vires act as a matter of law, the State's claim against Galveston ISD also fails.

## BACKGROUND

Galveston Independent School District ("Galveston ISD" or "the District") serves approximately 6,446 students over thirteen campuses. Galveston ISD is governed by a board of trustees who, as a body corporate, "have the exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC. CODE § 11.151(a). "All powers and duties not specifically delegated by statute to the [Texas Education Agency] or to the State Board of Education are reserved for the trustees." TEX. EDUC. CODE § 11.151(b). The Board's authority is further set out in Galveston ISD's Board Policy BBE (Local) which provides that "[t]he Board has final authority to determine and interpret the policies that govern the schools and, subject to the mandates and limits imposed by state and federal authorities, has complete and full control of the District." [Exhibit 1].

Last summer, Texas Governor Greg Abbott signed S.B. 10 into law requiring each public school to display posters of the Ten Commandments in its classrooms if the posters are donated to the school. *See* TEX. EDUC. CODE § 1.0041(d). The posters must meet certain size and visibility requirements so that they are "legible to a person with average vision from anywhere in the classroom." *See id.* § 1.0041(b)(1). The text on the posters of these religious mandates must be transcribed exactly as the state legislature demands in the statute. *See id.* § 1.0041(c).

Many predicted that outrage—and litigation—would ensue. It did. *See, e.g., Ashby v. Schertz-Cibolo-Universal City Indep. Sch. Dist.*, No. 5:25-cv-1613, ECF No. 1 (W.D. Tex. Dec. 2, 2025) (suit against sixteen school districts and "a class of all Texas independent school districts similarly situated"); *Cribbs Ringer v. Comal Indep. Sch. Dist.*, No. 5:25-cv-1181, ECF No. 1 (W.D. Tex. Sept. 22, 2025) (suit against thirteen school districts); *Albert v. Pflugerville Indep. Sch. Dist.*, No. 1:25-cv-1379, ECF No. 1 (W.D. Tex. Aug. 28, 2025) (suit against Pflugerville ISD and Texas Attorney General); *Nathan v. Alamo Heights Indep. Sch. Dist.*, No. 5:25-cv-756, ECF No. 1 (W.D. Tex. July 2, 2025) (suit against eleven school districts); *Alexander v. Morath*, No. 3:25-cv-1614, ECF No. 1 (N.D. Tex. June 24, 2025) (suit against Texas Commissioner of Education and three school districts).

Critical to this context is another case: *Roake v. Brumley*. On June 20, 2025—one day before Abbott signed the statute into law—a three-judge Fifth Circuit panel affirmed a district court's finding that Louisiana's nearly identical Ten Commandments statute violated the First Amendment. *See Roake v. Brumley*, 141 F.4th 614, 645 (5th Cir. 2025) ("*Stone v. Graham* is controlling. Under *Stone*, H.B. 71 is plainly unconstitutional."). On October 6, 2025, the Fifth

3

Circuit vacated that opinion and decided to rehear the case *en banc*. *See Roake v. Brumley*, 154 F.4th 329 (5th Cir. 2025).

On October 22, 2025—after the Fifth Circuit granted rehearing *en banc* in *Roake*— the Trustees voted to postpone displaying the Ten Commandments posters donated to the District[2] until the *en banc* court issued its decision in *Nathan*. In doing so, the Trustees acted with the benefit of a federal district court opinion expressly holding that S.B. 10 is unconstitutional. *See Nathan v. Alamo Heights Indep. Sch. Dist.*, 795 F. Supp. 3d 910 (W.D. Tex. 2025).

In *Nathan*, several parents sued twelve school districts, claiming First Amendment violations in connection with the districts' expected implementation of S.B. 10.[3] The court issued a preliminary injunction, enjoining the school districts from displaying the Ten Commandments in their classrooms because such an act would violate the Establishment Clause. *Nathan*, 795 F. Supp. 3d at 948 ("S.B. 10 crosses the line from exposure to coercion."). On August 25, 2025, the school districts represented by the Attorney General filed a notice of interlocutory appeal to the Fifth Circuit. On October 28, 2025, the Fifth Circuit announced it would consider the *Nathan* appeal *en banc* at oral argument alongside *Roake*. *See Nathan v. Alamo Heights Indep. Sch. Dist.*, 157 F.4th 713, 714 (5th Cir. 2025). Oral argument is scheduled for 1:00 p.m. on January 20, 2025.

---

[2] The State makes a point of alleging that the specific person who donated the posters to Galveston ISD is Texas State Sen. Mayes Middleton, R-Galveston. That fact is irrelevant to S.B. 10's posting requirement, which is triggered by "any offer of a privately donated poster." *See* TEX. EDUC. CODE § 1.0041(d)(1).

[3] With the exception of Houston ISD and Austin ISD, the defendants in *Nathan* are represented by Plaintiff's counsel in this case. *See* TEX. EDUC. CODE § 1.0041(g).

On November 18, 2025, the federal court in *Cribbs Ringer* largely echoed its Western District sister court in *Nathan* by stating that S.B. 10 violates the Establishment Clause. *See Cribbs Ringer v. Comal Indep. Sch. Dist.*, --- F. Supp. 3d ---, 2025 WL 3227708, *7 (W.D. Tex. Nov. 18, 2025) ("Therefore, it is impracticable, if not impossible, to prevent Plaintiffs from being subjected to unwelcome religious displays without enjoining Defendants from enforcing S.B. 10 across their districts.").

## ISSUES PRESENTED

1. Whether Plaintiff fails to state a claim because S.B. 10 is void under controlling Supreme Court precedent holding that the posting of the Ten Commandments in public schools violates the First Amendment.

2. Whether the Trustees retain their governmental immunity because Plaintiff cannot establish that the Trustees acted without legal authority or failed to carry out a purely ministerial act.

3. Whether Plaintiff fails to state a claim against Galveston ISD because a governmental entity cannot, as a matter of law, commit an ultra vires act.

## LEGAL STANDARDS

### I. Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). Courts "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001). Accordingly, courts should consider a Rule 12(b)(1) jurisdictional argument before addressing any argument on the merits. *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001), *cert denied*, 536 U.S. 960 (2002). Governmental immunity offers complete immunity from suit and defeats a trial court's jurisdiction, and is therefore properly raised through a Rule 12(b)(1) motion to dismiss. *See id.*

When ruling on a Rule 12(b)(1) motion to dismiss, a court may consider: (1) the complaint alone; (2) the complaint supplemented by any undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Spotts v. U.S.*, 613 F.3d 559, 566 (5th Cir. 2010).

## II.    Rule 12(b)(6): Failure to State a Claim

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A court accepts "all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019). A court does not, however, "accept as true legal conclusions, conclusory statements, or 'naked assertions' devoid of 'further factual enhancement.'" *Id.* at 336–37 (quoting *Iqbal*, 556 at 678).

## III.    Ultra Vires Claims

"Governmental immunity protects the State's political subdivisions from suit and liability." *Schroeder v. Escalera Ranch Owners' Ass'n*, 646 S.W.3d 329, 332 (Tex. 2022) (citing *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019)). "However, governmental immunity will 'not bar a suit against a government officer for acting outside his authority—*i.e.*, an *ultra vires* suit.'" *Id.* (quoting *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016)). Ultra vires claims may only be brought against government employees in their official capacities—the governmental entity itself remains cloaked with immunity. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (holding that *ultra vires*

suits "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity").

"To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372. "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus *ultra vires*, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hous. Belt & Terminal Ry. Co.*, 487 S.W.3d at 158. "If the challenged actions 'were not truly outside the officer's authority or in conflict with the law,' then the plaintiff has not stated a valid ultra vires claim and governmental immunity will bar the suit." *Schroeder*, 646 S.W.3d at 332–33 (quoting *Matzen v. McLane*, 659 S.W.3d 381, 388 (Tex. 2021)).

<u>ARGUMENT AND ANALYSIS</u>

I. **Several courts have held that Senate Bill 10 is unconstitutional because binding precedent holds that permanently displaying the Ten Commandments in public classrooms violates the First Amendment.**

Plaintiff's claims against Galveston ISD's Trustees necessarily hinge on a federal question: Whether S.B. 10 complies with the United States Constitution. Indeed, the question of whether the Trustees acted ultra vires cannot be assessed without first determining the constitutionality of S.B. 10 itself. In other words, only by resolving the threshold federal question can the Court evaluate whether the Trustees possessed the legal authority to engage in the conduct Plaintiff challenges.

The threshold constitutional question is not difficult. The First Amendment provides that "Congress shall make no law respecting an establishment of religion." U.S. CONST. amend. I. This restriction applies with equal force to the States through the Fourteenth Amendment. *Zelman v. Simmons-Harris*, 536 U.S. 639, 648 (2002). For more than four decades, federal courts have uniformly held that displaying the Ten Commandments in a public-school classroom violates the Establishment Clause. S.B. 10's constitutional defect is neither novel nor debatable—it is well-settled and longstanding.

### A.    *Stone v. Graham*

In 1980, the U.S. Supreme Court examined a Kentucky statute that required public schools to display the Ten Commandments in classrooms. *See Stone*, 449 U.S. at 39. The copies of the Ten Commandments were funded by private contributions. *See id.* The State of Kentucky insisted the statute "serve[d] a secular legislative purpose" because the statute required the posting of an additional statement connecting the Ten Commandments to United States common law. *See id.* at 41.

The Court rejected that argument, stating: "The Commandments do not confine themselves to arguably secular matters, such as honoring one's parents, killing or murder, adultery, stealing, false witness, and covetousness." *Id.* at 41–42 (citing *Exodus* 20:12–17; *Deuteronomy* 5:16–21). "Rather, the first part of the Commandments concerns the religious duties of believers: worshipping the Lord God alone, avoiding idolatry, not using the Lord's name in vain, and observing the Sabbath Day." *Id.* at 42 (citing same).

"Posting of religious texts on the wall," the Court concluded, "serves no such educational function." *Id.* "If the posted copies of the Ten Commandments are to have any

8

effect at all, it will be to induce the schoolchildren to read, meditate upon, perhaps to venerate and obey, the Commandments.  However desirable this might be as a matter of private devotion, it is not a permissible state objective under the Establishment Clause." *Id.*

"It does not matter that the posted copies of the Ten Commandments are financed by voluntary private contributions," the Court further noted, "for the mere posting of the copies under the auspices of the legislature provides the 'official support of the State . . . Government' that the Establishment Clause prohibits." *Id.* (citing *Sch. Dist. of Abington, Pa. v. Schempp*, 374 U.S. 203, 222 (1963)).  Finally, it was not significant that the Ten Commandments "are merely posted on the wall, rather than read aloud," "for 'it is no defense to urge that the religious practices here may be relatively minor encroachments on the First Amendment.'" *Id.* (quoting *Abington*, 374 U.S. at 225).

### B.    *Van Orden v. Perry*

Twenty-five years later, the Supreme Court affirmed the constitutionality of a monument of the Ten Commandments displayed on the Texas State Capitol grounds—but it also easily distinguished public grounds from public school classrooms.

In *Van Orden*, the Court examined the country's historical roots and found "an unbroken history of official acknowledgment by all three branches of government of the role of religion in American life from at least 1789."  545 U.S. at 686.  Because Texas "treated its Capitol grounds monuments as representing the several strands in the State's political and legal history," the Court stated that the placement of the monument did not violate the Establishment Clause.  *Id.* at 691.

9

The Court noted, however, that "[t]here are, of course, limits to the display of religious messages or symbols." *Id.* at 690. The Court found the Texas monument was a "far more passive use of [the Ten Commandments] than was the case in *Stone*, where the text confronted elementary school students every day." *Id.* at 691; *see also id.* at 703 (Breyer, J., concurring) (noting that the "government must exercise particular care in separating church and state" in public schools "given the impressionability of the young").

Accordingly, the *Van Orden* Court endorsed *Stone v. Graham* and the holding that the Ten Commandments may not be posted in public school classrooms.

## C.    *Roake v. Brumley*

In June 2024, the Louisiana governor signed House Bill 71, which required each public school to display the Ten Commandments in each classroom. *Roake v. Brumley*, 141 F.4th 614, 626 (5th Cir. 2025). Although public schools were not required to purchase the displays, the schools were required to post the Ten Commandments if the displays were donated, or if funds were donated to purchase the displays. *See id.*

Plaintiffs sued to enjoin enforcement of the statute. The district court agreed with the plaintiffs, and a panel of the Fifth Circuit upheld the injunction, stating that the Establishment Clause "was intended to erect 'a wall of separation between Church and State.'" *Id.* at 640 (quoting *Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 16 (1947)). "The Supreme Court 'has been particularly vigilant in monitoring compliance with the Establishment Clause in elementary and secondary schools." *Id.* (quoting *Edwards v. Aguillard*, 482 U.S. 578, 583–84 (1987)). After thoroughly analyzing *Stone* and *Van Orden*, the Fifth Circuit panel held that "[u]nder *Stone*, H.B. 71 is plainly unconstitutional." *Id.* at 645.

The State of Louisiana argued that "*Stone* is no longer controlling because it relies on *Lemon* [ *v. Kurtzman*, 403 U.S. 602 (1971)], which is no longer good law." *Id.* at 642. Indeed, the Supreme Court overruled *Lemon* in *Kennedy v. Bremerton School District*. *See* 597 U.S. 507, 534 (2022). But the Fifth Circuit panel reminded us that "[i]t is the Supreme Court's prerogative alone to overrule one of its precedents," and "*Kennedy* did not overrule *Stone*." *Roake*, 141 F.4th at 642. Moreover, the panel concluded that "even if *Stone* were overturned tomorrow, H.B. 71 violates the Establishment Clause under *Kennedy*." *Id.* at 645.

As explained above, the Fifth Circuit has vacated the panel's decision in *Roake* and elected to hear it *en banc*. *See Roake v. Brumley*, 154 F.4th 329 (5th Cir. 2025).

### D. *Nathan v. Alamo Heights ISD* and *Cribbs Ringer v. Comal ISD*

S.B. 10 has faced the same fate in two federal courts in the Western District of Texas. In *Nathan v. Alamo Heights Independent School District*, U.S. District Judge Fred Biery granted a preliminary injunction that enjoined enforcement of the statute at 11 defendant-school districts. After a 29-page analysis of the same issues relevant to the instant case, the Court concluded: "S.B. 10 crosses the line from exposure to coercion." *Nathan*, 795 F. Supp. 3d at 948.

U.S. District Judge Orlando Garcia reached the same conclusion. *See Cribbs Ringer v. Comal Indep. Sch. Dist.*, --- F. Supp. 3d ---, 2025 WL 3227708 (W.D. Tex. Nov. 18, 2025). Judge Garcia thoroughly recounted precedent surrounding the issue and held that "[w]hile *Kennedy* abrogated *Lemon*, Defendants overstate its impact on early Establishment Clause cases. Had the Court intended to overrule *Stone* [and other cases], it would have said so. It did not. Indeed, even in *Van Orden*, which adopted the historical approach later propounded in *Kennedy*,

the Court recognized the continued validity of such cases.  Even if *Kennedy* undermined *Stone* to some extent, it would still control this case." *Id.* at *6.

In sum, "[l]ower courts must apply controlling Supreme Court precedent, even when it 'appears to rest on reasons rejected in some other line of decisions.'"  *Id.* (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)).

## II.    Because Senate Bill 10 violates the First Amendment, it cannot serve as the basis of an ultra vires claim.

An unconstitutional statute is null and void; it has no effect.  *See Miller v. Davis*, 150 S.W.2d 973, 978 (Tex. 1941) ("A legislative Act which contravenes the Constitution is a void Act. It amounts to nothing and accomplishes nothing. . . . If an Act is unconstitutional, it is no law at all.").  "When a statute is adjudged unconstitutional, it is as if it had never been . . . It constitutes a protection to no one who has acted under it, **and no one can be punished for having refused obedience to it before the decision was made**."  *Ex Parte Bockhorn*, 138 S.W. 706, 707 (Tex. Crim. App. 1911) (emphasis added) (citations omitted).

Accordingly, the courts that have found that S.B. 10 is unconstitutional "did not annul the statute, for it was already lifeless.  It had been fatally smitten by the Constitution at its birth." *Id.* (quotation omitted).  In other words:

> An act of the Legislature which is not authorized by the [] Constitution at the time of its passage, is absolutely null and void. It is a misnomer to call such an act a law. It has no binding authority, no validity, no existence. It is as if it had never been enacted, and is to be regarded as never having been possessed of any legal force or effect.

*Id.* (citations omitted); *Alexander v. Johnson*, 217 F. Supp. 2d 780, 791–92 (S.D. Tex. 2001) (acknowledging that unconstitutional state statutes are void from their inception).

Plaintiff's case rests on an unconstitutional statute—S.B. 10. The notion that a federal court may afford relief to a plaintiff seeking relief pursuant to an unconstitutional statute defies credulity. "A court does not—in the nature of things it *can* not—give a 'remedy' for an unconstitutional statute, since an unconstitutional statute is not in itself a cognizable 'wrong.'" *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759–60 (1995) (Scalia, J., concurring). As such, according to Plaintiff's allegations, no "wrong" was committed by any Defendant.

Once this Court reaches the inescapable conclusion that S.B. 10 violates the First Amendment, Plaintiff's claims collapse. "In fact, what a court does with regard to an unconstitutional law is to simply *ignore* it. It decides the case 'disregarding the [unconstitutional] law,' because a law repugnant to the Constitution is void, and is no law." *Id.* (quoting *Marbury v. Madison*, 1 Cranch 137, 178 (1803)).

Simply put, to survive a motion to dismiss, Plaintiff must state a claim "upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Because this Court cannot grant relief borne out of the unconstitutional S.B. 10., Plaintiff does not—and cannot—state its claim. Plaintiff's claims should be dismissed.

## III. The Trustees acted within their lawful authority under Board Policy, State Law, and Federal Law, and are therefore immune from liability.

Plaintiff contends that the Trustees acted without legal authority when they voted to delay posting the Ten Commandments in Galveston ISD classrooms. Under well-established jurisprudence, an ultra vires action requires conduct that exceeds an official's lawful authority—not a discretionary policy decision made in accordance with governing law. Plaintiff's allegation therefore falls far short of stating a viable claim.

Most instructive is *Hall v. McRaven*. *See* 508 S.W.3d 232 (Tex. 2017). There, a University of Texas Regent attempted to force then-Chancellor McRaven to produce certain university records. Under Section 5.4.6 of a Regents' Rule, McRaven had discretion to "determine whether a Regent may review information protected by [federal law]." *Hall*, 508 S.W.3d at 242. McRaven refused to produce the records unredacted based on the Family Educational Rights and Privacy Act (FERPA), asserting that federal law protected certain information in the records. The Regent brought an ultra vires claim, arguing that McRaven acted outside of his legal authority to misapply the federal privacy law.

The ultimate issue in the ultra vires case was "whether the chancellor's discretion to interpret federal law could be challenged in court." *Schroeder*, 646 S.W.3d at 334. The Texas Supreme Court held that McRaven's actions in redacting the records were not ultra vires and that sovereign immunity applied, thus requiring dismissal of the Regent's suit. "Here, McRaven's interpretation is not of his organic authority but rather federal privacy law—a law *collateral* to McRaven's authority." *Hall*, 508 S.W.3d at 242.

"When the ultimate and unrestrained objective of an official's duty is to interpret collateral law, a misinterpretation is not overstepping such authority; it is a compliant action even if ultimately erroneous." *Id.*

Similar rules protect the Trustees' authority to interpret collateral law. The First Amendment is enshrined in Galveston ISD Board Policy FNA: "A district shall take no action respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition a board for a redress of grievances." [Exhibit 2, Galveston ISD Board Policy FNA

14

(Legal) (quoting U.S. CONST. amend. I)].  Moreover, under Board Policy , the District "shall not adopt a policy that establishes an improper majoritarian election on religion." *Id.*

Here, Defendants are bound by their own board policies—as well as their oaths of office—to ensure and determine Galveston ISD's compliance with the First Amendment. "[Defendants'] discretion in making that determination is otherwise unconstrained." *Hall*, 508 S.W.3d at 242.  Additionally, Galveston ISD Board Policy BBE grants the Board the authority to determine and interpret state and federal law and ultimately control the district.  [See Exhibit 1].  "Governmental immunity bars suits complaining of an exercise of absolute discretion." *Hous. Belt & Terminal Ry. Co.*, 487 S.W.3d at 163.

By voting to delay posting the Ten Commandments until the Fifth Circuit issues its *en banc* opinion in *Nathan*, the Trustees acted squarely within their authority under the Texas Education Code and Galveston ISD Board Policies BBE and FNA.  The Trustees possess the exclusive power and duty to govern and oversee the management of Galveston ISD.  *See* TEX. EDUC. CODE § 11.151(a).  Accordingly, they did not—and as a matter of law could not—act without authority, and their immunity remains intact.  Plaintiff's claims must be dismissed under Rule 12(b)(1).

## IV.    Plaintiff's claims against Galveston ISD must be dismissed because a governmental entity cannot be liable for an alleged ultra vires act, and because Plaintiff's claims otherwise fail as a matter of law.

Plaintiff's claims against Defendant Galveston ISD should be dismissed under Rule 12(b)(6) because, as detailed above, Plaintiff cannot obtain relief pursuant to an unconstitutional statute.  Alternatively, dismissal is also warranted under Rule 12(b)(1) because "governmental entities themselves [are] not proper parties to an *ultra vires* suit," and retain their

immunity from such claims. *Hall*, 508 S.W.3d at 238–39; *see also Heinrich*, 284 S.W.3d at 372–73 (ultra vires claims "cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity.").

<u>CONCLUSION AND PRAYER</u>

For the reasons established in *Stone v. Graham*; *Van Orden v. Perry*; the three-judge Fifth Circuit panel in *Roake v. Brumley*; *Nathan v. Alamo Heights ISD*; and *Cribbs Ringer v. Comal ISD*, S.B. 10 is unconstitutional.  Plaintiff's attempt to circumvent binding federal law and compel the Galveston ISD Trustees to do the same is legally untenable.  Because an unconstitutional statute does not constitute "legal authority," Defendants cannot be deemed to have acted ultra vires.  As such, Plaintiff is not entitled to any relief.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By:    /s/ *Celena C. Vinson*
       Celena C. Vinson, Attorney-in-Charge
       State Bar No. 24037651
       Southern District of Texas No. 2220428
       cvinson@thompsonhorton.com
       Stephanie A. Hamm
       State Bar No. 24069841
       Southern District of Texas No. 108779
       shamm@thompsonhorton.com
       Phillip Ericksen
       State Bar No. 24137378
       Southern District of Texas No. 3896037
       pericksen@thompsonhorton.com

       3200 Southwest Freeway, Suite 2000
       Houston, Texas 77027
       Telephone: (713) 554-6742
       Facsimile: (713) 583-8884

       **ATTORNEYS FOR DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

On December 4, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Celena C. Vinson*
Celena C. Vinson