IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| *Plaintiff* | § | |
| v. | § | CIVIL ACTION NO. 3:25-cv-00378 |
| GALVESTON INDEPENDENT SCHOOL DISTRICT, ANTHONY BROWN, in his official capacity as GALVESTON ISD President, JOHNNY SMECCA, in his official capacity as GALVESTON ISD Vice President, ELIZABETH BEETON, in her official Capacity as GALVESTON ISD Trustee, DAVID H. O'NEAL, JR., in his official capacity as GALVESTON ISD Trustee, ANN MASEL, in her official capacity as GALVESTON ISD Trustee, MINDY LAKIN, in her official capacity as GALVESTON ISD Trustee, and JUSTIN TUCKER, in his official capacity as GALVESTON ISD Trustee | § | |
| *Defendants* | § | |

# DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO REMAND

## SUMMARY OF THE ARGUMENT

Plaintiff's contention that there is nothing federal on the face of the State's complaint is unfounded. On the very first page of the Original Petition, Plaintiff expressly relies on a decision of the United States Supreme Court to support its ultra vires claims against Defendants. Dkt. 1-1 at 3 (citing *Van Orden v. Perry*, 545 U.S. 677 (2005)). Plaintiff cannot credibly maintain that its claims are devoid of a federal question while simultaneously

1

imploring the state court to apply binding United States Supreme Court precedent interpreting the First Amendment's Establishment Clause.

Moreover, Plaintiff states in paragraph twenty-one that its claims arise from the Galveston Independent School District Board of Trustees decision to delay posting the Ten Commandments pending the outcome of the appeal in *Nathan, et. al. v. Alamo Heights Ind. Sch. Dist.*, et al., 795 F. Supp. 3d 910 (W.D. Tex. Aug. 20, 2025). *See* Dkt. 1-1, ¶ 21. In *Nathan,* the federal court held that Senate Bill 10 ("S.B. 10") violated both the Establishment Clause and the Free Exercise Clause of the United States Constitution and entered a preliminary injunction barring enforcement of S.B. 10 at eleven Texas school districts. Notwithstanding that ruling, Plaintiff seeks in this action to compel enforcement of S.B. 10, further underscoring that its claims are grounded squarely in federal constitutional law.

Plaintiff's assertion that its claims against Defendants do not implicate federal law is simply incorrect. Plaintiff's ultra vires claim necessarily requires this Court—or any court—to determine whether Defendants acted with or without "legal authority" when they voted to delay implementation of S.B. 10 pending Fifth Circuit review of the statute's constitutionality. Resolution of that issue turns on federal constitutional questions, including whether S.B. 10 may lawfully be enforced in light of ongoing federal appellate review. Furthermore, the federal issue presented is both actually disputed and substantial. Finally, the exercise of federal question jurisdiction in this case would not upset the balance of federalism.

### BACKGROUND

Under S.B. 10, a public school must display posters of the Ten Commandments in its classrooms if the posters are donated to the school. *See* TEX. EDUC. CODE § 1.0041(d). The

posters must meet certain size and visibility requirements so that they are "legible to a person with average vision from anywhere in the classroom." *Id.* § 1.0041(b)(1). The text on the posters of these religious mandates must be transcribed exactly as the state legislature demands in the statute. *See id.* § 1.0041(c).

On November 7, 2025, Plaintiff filed a lawsuit against Defendants in the 122nd Judicial District Court in Galveston County, Texas. *See* Dkt. 1-1 at 3. In the Petition, Plaintiff brings ultra vires claims and claims under the Texas Declaratory Judgment Act against the Defendants. Dkt. 1-1, ¶. To prevail, Plaintiff must show that the Defendants acted without legal authority by voting to delay displaying donated posters of the Ten Commandments in Galveston ISD classrooms.

On November 20, 2025, Defendants timely removed this case. *See* Dkt. 1. On December 1, 2025, Plaintiff filed its Motion to Remand, arguing that this Court lacks subject matter jurisdiction. *See* Dkt. 4.

## **LEGAL STANDARD**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 386, 392 (1987).

Most of the time, federal question jurisdiction is present when "a suit arises under the law that creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916). But the Supreme Court has "also noted that a case may arise under federal law

3

'where the vindication of a right under state law necessarily turned on some construction of federal law.'" *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)). In this category of cases, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

## ARGUMENT AND ANALYSIS

Defendants properly removed this case pursuant to the four-pronged *Grable* Test, which the Fifth Circuit dutifully follows. *See Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) ("[F]ederal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities."). Each of these factors is satisfied here, and each independently supports the existence of federal question jurisdiction.

**A. Element One: The resolution of the federal issue of the constitutionality of Senate Bill 10 is necessary to the resolution of Plaintiff's ultra vires claim.**

In its attempt to avoid federal jurisdiction and return to state court, Plaintiff misconstrues the first *Grable* factor. Plaintiff contends that its burden is limited to showing that Galveston ISD accepted donated Ten Commandments posters and failed to display them. *See* Dkt. 4 at 5. That oversimplification ignores the statutory reality. As Plaintiff itself conceded in the preliminary injunction hearing in *Nathan*, S.B. 10 provides no enforcement mechanism

4

for alleged violations.[1] *See* Exhibit 1 at 30:20–31:2. Accordingly, Plaintiff's sole means of compelling compliance is an ultra vires claim, which necessarily requires a showing that a government actor acted without legal authority. Determining whether Defendants lacked legal authority to delay implementation of S.B. 10 squarely implicates federal constitutional questions, satisfying the first *Grable* factor.

Consider *Empire Healthchoice v. McVeigh*, in which a health insurance carrier for federal employees brought a state-law action against the estate of a former federal employee. *See* 547 U.S. 677, 687 (2006). The carrier's claim arose from an alleged breach of a reimbursement provision in the federal health insurance plan. *See id.* at 687–88. The carrier sued in federal court because federal common law governed its reimbursement claim. *See id.* The Supreme Court denied federal question jurisdiction, distinguishing *Grable*, where federal question jurisdiction was found. *See id.* at 700–01. The Court explained that *Grable* presented a nearly pure issue of law—one that could be definitively resolved and would govern numerous future tax sale cases. In contrast, *Empire Healthchoice* involved a claim that was highly fact-bound and situation specific, with no broader legal question capable of resolution in a single adjudication. *Id.* at 700–01.

Here, this case is *not* fact-specific. The parties largely agree on the facts as alleged. The only dispute between the parties *is* a "pure issue of law." *Id.* at 700. That legal question is whether S.B. 10 is permissible under the First Amendment of the U.S. Constitution. As *Empire*

---

[1] Remarkably, in *Nathan*, Plaintiff argued that challengers to S.B. 10 lacked standing because the statute contained no enforcement mechanism. Yet Defendants now find themselves defending against an enforcement action brought by the State of Texas for an alleged violation of S.B. 10. Plaintiff cannot credibly maintain both positions. Having previously disclaimed any enforceability sufficient to confer standing, Plaintiff now seeks to invoke that same statute as a basis for suit—an impermissible attempt to have it both ways.

5

*Healthchoice* recognized, *Grable*-like cases that turn on "pure issues of law" are more particularly well suited for federal question jurisdiction. That principle applies directly to Plaintiff's ultra vires claims in this case.

"An ultra vires action requires a plaintiff to 'allege, and ultimately prove, that the official acted without legal authority or failed to perform a purely ministerial act.'" *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "The standard for an ultra-vires act is whether it was done without legal authority, not whether it was correct." *Hunnicutt v. City of Webster*, 641 S.W.3d 584, 594 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (citing *Hall*, 508 S.W.3d at 243).

Plaintiff seeks, among other forms of relief, a declaration that Defendants "acted unlawfully in indefinitely delaying the display of the Ten Commandments that were donated to them." Dkt. 1-1, ¶ 38. Plaintiff admits in its Original Petition that Defendants voted to delay displaying posters of the Ten Commandments because Defendants saw S.B. 10 as unconstitutional. *See* Dkt. 1-1 at 5 n.3 (citing news article about Defendants' discussion and interpretation of the First Amendment Establishment Clause in relation to S.B. 10); *id.* at ¶ 21 (acknowledging that Trustee Beeton made the motion at issue based on federal constitutional law); Dkt. 1-1 at 11 ¶ 34–37 (acknowledging likely litigation arising out of Galveston ISD's implementation of S.B. 10). Accordingly, a federal issue is plainly present on the face of the petition. *See Box v. PetroTel, Inc.*, 33. F.4th 195, 202 (5th Cir. 2022) (holding that a party invoking *Grable* must show that the alleged federal issue appears on the face of the state court petition).

Plaintiff further raised the issue of the constitutionality of S.B. 10 in its Original Petition by asserting that Defendants would not be harmed by an injunction compelling them to post

the Ten Commandments, since the Attorney General could represent them if they were sued complying with S.B. 10. Dkt. 1-1, ¶ 35. Indeed, Plaintiff explicitly acknowledged that legal challenges to the statue were anticipated when drafting S.B. 10. Accordingly, the success of Plaintiff's ultra vires claim depends on the legal interpretation and constitutionality of S.B. 10.

**B.      Element Two: The federal issue is actually disputed.**

Plaintiff contends that no federal issue is "actually disputed." *Grable*, 545 U.S. at 314. That argument does not persuade because, clearly, the parties dispute whether Defendants acted without legal authority, and resolving that question necessarily involves interpretation of a federal issue—specifically, the constitutionality of S.B. 10.

While it is true, as Plaintiff states, that the parties do not dispute the general *facts* of this case, the "actually disputed" element of the *Grable* Test focuses on whether the interpretation of *federal law* "is the central point of the dispute." *Gunn v. Minton*, 568 U.S. 251, 259 (2013); *see also Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 209 (4th Cir. 2022) ("A federal issue is 'actually disputed' when the parties disagree about the effect of federal law." (citing *Gunn*, 568 U.S. at 259)). Here, the parties disagree on the effect of federal law on Defendant's authority not to comply with S.B. 10 .

Plaintiff itself relied on a United States Supreme Court decision to argue that the version of the Ten Commandments it seeks to require Defendants to post has been held constitutional. *See* Dkt. 1-1 at 3. Significantly, the very case Plaintiff cites in its Original Petition—*Van Orden v. Perry*, 545 U.S. 677 (2005)—addressed the constitutional limits of public displays of the Ten Commandments and emphasized that the religious character of the

7

Commandments rendered their posting in public school classrooms unconstitutional. This underscores that the federal constitutional question is central to the dispute.

Defendants agree with Plaintiff that "anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction." Dkt. 4 at 6 (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008)). But Plaintiff misses the mark because Defendants do not raise a preemption defense. *See* Dkt. 5 (Defendants' Motion to Dismiss).

Complete preemption arises only "when a federal statute wholly displaces a state-law cause of action through complete preemption." *Woodard-Hall v. STP Nuclear Operating Co.*, 473 F. Supp. 3d 740, 745 (S.D. Tex. 2020) (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "In other words, 'what otherwise appears as merely a state law claim is converted to a claim 'arising under' federal law for jurisdictional purposes because the federal statute so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all.'" *Id.* (quoting *Barrois*, 533 F.3d at 331). "The central inquiry in a complete-preemption analysis is 'whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under the state law.'" *Id.* (quoting *Barrois*, 533 F.3d at 331).

Importantly, Defendants are not asserting a complete preemption defense. If they had, they would not have removed this case. *See Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 942 (5th Cir. 2013) ("A federal court can exercise jurisdiction only where the case satisfies the well-pleaded complaint rule."). Moreover, no federal statute exists that Congress intended to

8

replace state ultra vires claims. It is therefore *not* Defendants' position that Plaintiff's ultra vires claims are preempted by federal statute.

Instead, Defendants' theory is that resolution of Plaintiff's ultra vires claim hinges on resolution of a federal constitutional issue. And that constitutional issue falls under the ultra vires element of whether Defendants acted "without legal authority."

Therefore, the federal issue at the heart of Plaintiff's claim is "actually disputed," and this element favors Defendants.

**C.     Element Three: The federal issue is substantial.**

Plaintiff concedes that the federal issue at stake in this case is substantial. *See* Dkt. 4 at 3 n.1. "[F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313.

Indeed, "[a]s *Merrell Dow* itself suggested, constitutional questions may be the more likely ones to reach the substantiality that can justify federal jurisdiction." *Grable*, 545 U.S. at 320 n.8 (citing *Merrell Dow*, 478 U.S. at 814 n.12). The federal issue embedded within Plaintiff's ultra vires claim squarely implicates the Establishment Clause of the First Amendment. *See* U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion."); *see also Zelman v. Simmons-Harris*, 536 U.S. 639, 648 (2002) (holding that the Establishment Clause applies with equal force to the States through the Fourteenth Amendment).

The interest is not abstract or attenuated. The Fifth Circuit is currently considering the constitutionality of a nearly identical statute. *See, e.g., Roake v. Brumley*, 154 F.4th 329 (5th Cir. 2025) (ordering en banc review with oral argument set for January 20, 2026). Of course, the

Establishment Clause has been shaped for decades by Supreme Court jurisprudence. *See Stone v. Graham*, 449 U.S. 39, 41 (1980) (holding that posting the Ten Commandments in public schools violates the First Amendment); *Van Orden v. Perry*, 545 U.S. 677, 703 (2005) (Breyer, J., concurring) (noting that the "government must exercise particular care in separating church and state" in public schools "given the impressionability of the young" in a case where *Stone v. Graham* was affirmed).

In short, Plaintiff's ultra vires theory necessarily requires adjudication of a substantial and contested question of federal constitutional law—one that lies at the heart of the Establishment Clause and squarely within federal jurisdiction. As such, the third *Grable* factor favors Defendants.

**D.      Element Four: Federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.**

Plaintiff's reliance on *Merrell Dow* is misplaced. Plaintiff ignores the Supreme Court's clarification of *Merrell Dow* in *Grable*, which recognized that federal question jurisdiction may exist even in the absence of a federal cause of action when the state law claim necessarily raises a substantial, disputed federal issue. "[I]n exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Grable*, 545 U.S. at 317 (quoting *Merrell Dow*, 478 U.S. at 810).

In *Merrell Dow*, the Court considered whether a negligence case arose under federal law, in which the case depended in part on whether the defendant drug company had violated federal misbranding law. *See* 478 U.S. at 805–06. The Court concluded that federal question jurisdiction was lacking because "Congress has determined that there should be no private, federal cause of action for the [federal misbranding] violation." *Id.* at 817. As such, the Court

10

held that the plaintiff there did not pursue a claim "'arising under the Constitution, laws, or treaties of the United States.'" *Id.* at 817 (quoting 28 U.S.C. § 1331).

*Grable* introduced other factors courts must consider when conducting the federal-state balancing inquiry. Courts must analyze whether an exercise of jurisdiction would "materially affect, or threaten to affect, the normal currents of litigation," as well as "Congress's intended division of labor between state and federal courts." *Id.* at 319. They must also "examin[e] the importance of having a federal forum for the issue." *Id.*

To be clear, Defendants do not wish to open the federal courthouse doors every time a plaintiff sues a defendant on an ultra vires theory—or even every time an ultra vires defendant argues a statute is unconstitutional. Such an expansive rule would "herald[] a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319. Defendants assert federal question jurisdiction here only because *Plaintiff* raises the federal First Amendment issue squarely on the on the face of its well-pleaded complaint.

As the Fifth Circuit has explained, "[t]he type of claim that creates a federal question under *Grable* is typically a state-law claim premised on some component of federal law." *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022). In *Mitchell*, the court affirmed remand because the federal issue was merely raised as a defense. *See id.* at 589.

That is not this case. Here, by challenging Defendant's legal authority to delay posting the Ten Commandments, Plaintiff affirmatively and expressly relies on the constitutionality of S.B. 10 under the First Amendment. Moreover, decades of Supreme Court precedent affirm the importance of federal question jurisdiction over all sorts of First Amendment issues— especially those involving the Establishment Clause and the posting of the Ten

Commandments in public schools and on government property. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460 (2009) (Ten Commandments monument in public park); *Van Orden*, 545 U.S. at 703 (Ten Commandments monument on Texas Capitol grounds); *McCreary Cnty., Ky. v. Am. Civil Liberties Union of Ky.*, 545 U.S. 844 (2005) (Ten Commandments in courthouses); *Stone*, 449 U.S. at 41 (privately donated Ten Commandments displays in public school classrooms); *see also Nathan v. Alamo Heights Indep. Sch. Dist.*, No. 5:25-cv-756, ECF No. 70 at 8:23–24 (W.D. Tex. Aug. 16, 2025) (transcript of preliminary injunction hearing, in which U.S. District Judge Fred Biery remarked, "this issue is likely to get to the United States Supreme Court.").

Federal courts are the appropriate forums for adjudicating claims that implicate constitutional rights. A key issue of constitutional law is embedded within Plaintiff's state law claim, as Plaintiff itself acknowledges. Arguments suggesting that federal jurisdiction would unduly disturb federalism are therefore unpersuasive. This factor weights in favor of Defendants and this Court's exercise of federal question jurisdiction.

\* \* \*

"[A] request to exercise federal-question jurisdiction over a state action calls for a 'common-sense accommodation of judgment to the kaleidoscopic situations' that present a federal issue, in 'a selective process which picks the substantial causes out of the web and lays the other ones aside.'" *Grable*, 545 U.S. at 313 (quoting *Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 117–18 (1936)). Having satisfied the four elements of longstanding Supreme Court precedent, as most fully described in *Grable*, Defendants respectfully urge the Court to take a

common-sense approach to this complex and atypical case and exercise federal question jurisdiction over Plaintiff's ultra vires claims against Defendants. [2]

## CONCLUSION AND PRAYER

Defendants Galveston Independent School District; Anthony Brown; Johnny Smecca; Elizabeth Beeton; David H. O'Neal, Jr.; Ann Masel; Mindy Lakin; and Justin Tucker respectfully request that this Court deny Plaintiff's Motion to Remand.

Respectfully submitted,

**THOMPSON & HORTON LLP**

By: /s/ *Celena C. Vinson*
Celena C. Vinson, Attorney-in-Charge
State Bar No. 24037651
Southern District of Texas No. 2220428
cvinson@thompsonhorton.com
Stephanie A. Hamm
State Bar No. 24069841
Southern District of Texas No. 108779
shamm@thompsonhorton.com
Phillip Ericksen
State Bar No. 24137378
Southern District of Texas No. 3896037
pericksen@thompsonhorton.com

3200 Southwest Freeway, Suite 2000
Houston, Texas 77027
Telephone: (713) 554-6742
Facsimile: (713) 583-8884
**ATTORNEYS FOR DEFENDANTS GALVESTON ISD, ANTHONY BROWN, JOHNNY SMECCA, ELIZABETH BEETON, DAVID H. O'NEAL, JR., ANN MASEL, MINDY LAKIN, AND JUSTIN TUCKER**

---

[2] Having properly exercised federal question jurisdiction over Plaintiff's ultra vires claim, this Court also possesses the ability to exercise supplemental jurisdiction over Plaintiff's claim under the Texas Declaratory Judgment Act claim. Defendants respectfully request that the Court do so.

**CERTIFICATE OF SERVICE**

On December 19, 2025, I electronically filed the foregoing document with the Clerk of the Court of the United States District Court for the Southern District of Texas, using the electronic case filing system of the Court. I hereby certify that I have served all counsel and/or pro se parties of record electronically using the CM/ECF filing system or by any other manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Celena C. Vinson*
Celena C. Vinson
4927-8371-5203, v. 1
